## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 18 2016, 7:42 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Emerito F. Upano | Holly J. Wanzer |
| Indianapolis, Indiana | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gierly Perrigo Ingco, | February 18, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 29A05-1507-JP-833 |
| v. | Appeal from the Hamilton Circuit Court |
| William D. Anderson, Jr., | The Honorable Paul A. Felix, Judge |
| *Appellee-Plaintiff.* | Cause No. 29C01-0812-JP-2124 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Respondent, Gierly Perrigo Ingco (Mother), appeals the trial court's modification of parenting time.

We affirm.

## ISSUES

Mother raises two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion by requiring Mother's parenting time to be supervised; and

(2) Whether the paternity affidavit, establishing Father's paternity to the minor child, is voidable.

## FACTS AND PROCEDURAL HISTORY

The parties' minor child, W.A. (Child), was born out of wedlock on December 28, 2005. At the Child's birth, Mother and Appellee-Petitioner, William D. Anderson, Jr. (Father), executed a paternity affidavit affirming Father to be the Child's natural father. Father is listed on the birth certificate. Initially, Mother and Father lived together with the minor child. When the cohabitation ended, the parties agreed that the Child would live with Mother.

In December 2008, Father filed a petition to establish paternity. In April 2009, Father filed an emergency petition for temporary custody. In June 2009, the trial court entered a preliminary order awarding temporary physical custody of

the Child to Father. On December 8, 2014, the trial court issued its Final Judgment and Decree of Paternity in which it established Father's paternity of the Child, awarded legal and primary physical custody to Father, and denied all requests by Mother to set aside the paternity affidavit and request DNA testing to confirm biological paternity as untimely. In March 2015, pursuant to Indiana Trial Rule 60(B), Mother filed a motion for relief from the paternity affidavit, which was denied by the trial court. Mother appealed the trial court. On appeal, we concluded that Mother "failed to show that she is entitled to the extraordinary remedy of relief from the paternity decree." *In re Paternity of W.A., III*, 29A05-1504-JP-161 (Ind. Ct. App. Aug. 7, 2015).

[6] On March 16, 2015, while Mother's motion for relief was pending, Father filed a verified petition for modification of parenting time, asserting that "Mother is engaged in a concerted and active campaign to convince [the Child] that a custody change from Father to Mother is imminent and necessary" and requesting the trial court to mandate supervised parenting time for Mother. (Appellant's App. p. 25). On April 14, 2015 and May 12, 2015, the trial court conducted a hearing on Father's petition. During the hearing, Father presented evidence that Mother was exhibiting a pattern of alienating behaviors, which were causing emotional damage to the Child. On May 26, 2015, the trial court issued its Order modifying the existing parenting time and requiring Mother's parenting time to be supervised. In its Order, the trial court found, in pertinent part, that

18.  Mother has engaged in a pattern of behavior which is causing great anxiety and pressure on the Child.  Mother has encouraged the Child to call 911 during Father's parenting time without any emergency need, has encouraged the Child to participate in the obstruction of parenting time exchanges, has repeatedly disparaged Father to the Child, has discussed her intentions to seek a custody change with the Child, has obtained unnecessary medical treatment for the Child, has made unsubstantiated reports to the Department of Children's Services [sic] containing false claims of abuse or neglect by Father and has generally failed to encourage a positive relationship between the Child and Father.

19.  The Child's therapist, Dr. Randall Krupsaw, testified at the hearing.  Based on his testimony, the [c]ourt determined that the Child is exhibiting anxiety and confusion.  In addition, the Child is engaged in negative and destructive behaviors such as physical altercations and running away from home.

20.  Dr. Krupsaw concluded that without intervention and an interruption of this pattern of behavior, the relationship between Father and the Child will continue to deteriorate, which is not in the minor child's best interests.

21.  Mother's behavior has caused substantial negative impact on Father's relationship with the minor child, and the Child has developed anxiety and an emotional adjustment disorder as a result.  The child's long term emotional health is at risk if immediate intervention and interruption of Mother's behavior does not occur.

* * *

26.  It is not the intention of this [c]ourt to require supervised parenting time indefinitely; however, with the evidence presented, the [c]ourt has no ability to determine how long it will take Mother to stop behaving in ways demonstrated above and that have caused the Child so much trauma.  Unfortunately, the [c]ourt acknowledges that this order will likely add anxiety and stress to the Child.  The Child wants to be with both his parents.

> The Child has a great emotional bond with both parents. The [c]ourt weighs this concern against the very real damage Mother is causing on a regular and consistent basis to the Child. Considering the delicate balance involved here, the [c]ourt concludes that supervised parenting time will in the long run be more beneficial than harmful, and so orders supervised parenting time to begin.

(Appellant's App. pp. 12-13, 14).

Mother now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Modification of Parenting Time*

Mother contends that the trial court's modification of parenting time is unsupported by the evidence. Decisions involving parenting time rights under the paternity statutes are committed to the sound discretion of the trial court. *In re Paternity of W.C.*, 952 N.E.2d 810, 815 (Ind. Ct. App. 2011). Reversal is appropriate only upon a showing of an abuse of that discretion. *Id*. at 816. When reviewing the trial court's decision, we neither reweigh the evidence nor reexamine the credibility of the witnesses. *Id*.

Indiana has long recognized that the right of parents to visit their children is a precious privilege that should be enjoyed by noncustodial parents. *Lasater v. Lasater*, 809 N.E.2d 380, 400 (Ind. Ct. App. 2004). Accordingly, a noncustodial parent in a paternity action is generally entitled to reasonable parenting time rights. *See* Ind. Code § 31-14-14-1(a). The right of parenting time, however, is subordinated to the best interest of the child. *Lasater*, 809 N.E.2d at 401.

Indiana Code section 31-14-14-1, which outlines the parenting time rights of a noncustodial parent in a paternity action, provides:

> (a) A noncustodial parent is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time might:
>
> (1) endanger the child's physical health and well-being; or
>
> (2) significantly impair the child's emotional development.

[10] Even though I.C. § 31-14-14-1 uses the term "might," we have interpreted the statute to mean that a court may not restrict parenting time unless that parenting time would endanger the child's physical health or well-being or significantly impair the child's emotional development. *Walker v. Nelson*, 911 N.E.2d 124, 130 (Ind. Ct. App. 2009). By its plain language, the statute requires a court to make a specific finding of physical endangerment or emotional impairment before placing a restriction on the noncustodial parent's parenting time. *Id.* A party who seeks to restrict parenting time bears the burden of presenting evidence justifying such a restriction. *Farrell v. Littell*, 790 N.E.2d 612, 616 (Ind. Ct. App. 2003). The burden of proof is the preponderance of the evidence standard. *In re Paternity of P.B.,* 932 N.E.2d 712, 720 (Ind. Ct. App. 2010).

[11] Here, the trial court made a specific finding that parenting time would endanger the Child's emotional wellbeing. The trial court's finding is supported by the testimony of Dr. Randall Krupsaw (Dr. Krupsaw), W.A.'s therapist, who explained at the hearing, that

[M]other tells [W.A.] that his [F]ather tricked his [M]other into liking him and staying at his house when they were boyfriend and girlfriend. That [F]ather became mean to [M]other by yelling at her and so she left him. That [F]ather is not really his [F]ather. That [F]ather got the [c]ourt to make [M]other pay $100 every month to [F]ather. That [F]ather has made [M]other pay a lot of money to court. That losing all that money is going to make [M]other have to give up her television, telephone, dinners out, and other fun things. That his step-father has had to go to Texas to make money because [F]ather has been taking so much money from [M]other. That [F]ather is trying to take him away from [M]other. That [M]other would like him to call [F]ather "Daddy-Bill" and that it's okay to call his step-father "Dad." That the [c]ourt made it so he has to call [F]ather "Dad." That it's okay if he stays with [M]other overnight when he's really supposed to go back with [F]ather to [F]ather's house. That [M]other is going to court to make it so he can live with her. That [M]other misses him a lot and wants him to live with her. That soon he will be able to go to court and tell the Judge that he wants to live with [M]other. And if the [c]ourt lets him live with [M]other, then [M]other will get back all the money that she has had to pay to [F]ather.

(Transcript pp. 31-32). Based on these observations, Dr. Krupsaw concluded that

[W.A.] seemed to be experiencing what we call an adjustment disorder with mixed disturbance of emotions and conduct. It's a mental health diagnosis that describes a condition that is stress caused and involves typically some emotional difficulties involving anxiety, frustration, anger, depression, that are also finding expression in some increased behavior problems often, you know, in the form of defiance or oppositionality. And that seemed to be what was going on. The main operative stressors driving that problem appeared to be [W.A.] missing his [M]other and, according to [W.A.'s] reports, his [M]other engaging in

what I would call parental alienating tactics, including pressuring about custody issues and disparaging [F]ather to [W.A.]

(Tr. pp. 29-30). Dr. Krupsaw also cautioned that if W.A. continues to be subjected to pressure, W.A. "is going to act irrationally and in a counter-productive, potentially dangerous way to try to resolve that conflict that [W.A.] is under." (Tr. p. 38).

[12] While this evidence alone would be sufficient to support the trial court's modification of parenting time, the record provides an abundance of other examples of Mother's intent to interfere in Father's relationship with his Child. Father testified that Mother, on several occasions, obstructed Father's parenting time by allowing and encouraging W.A. to refuse to leave her house at the conclusion of her parenting time and by encouraging W.A. to act out while he is with Father. Mother rewarded the Child with a pancake breakfast after he ran away from Father's residence. Mother also admitted to reporting Father to the Department of Child Services for abuse or neglect. After an investigation, these reports were determined to be unsubstantiated.

[13] Based on this evidence, we agree with the trial court that Mother's behavior is endangering the Child's emotional and psychological development. *See* I.C. § 31-14-14-1. The imposition of supervised visitation with Mother until she stops "behaving in ways demonstrated above and that have caused the Child so much trauma" is in the Child's best interests. *See* I.C. § 31-14-14-2; (Tr. p. 14). While this modification will allow W.A. to still spend time with both parents, at the

same time his emotional and psychological state of mind can start to heal. We affirm the trial court's modification of Mother's parenting time.

## II. *Paternity Affidavit*

[14] Mother contends that the trial court's order for supervised parenting time is an abuse of discretion because it is based on a voidable paternity affidavit. Specifically, she maintains that the paternity is voidable because "Mother state[d] under oath that she never had sex with Father, then the signature of Father is not valid[.]" (Appellant's Br. 7). However, not only is this argument raised for the first time on appeal and thus waived for our review, we already considered Mother's assertions of fraud and voidability with respect to the paternity affidavit in the prior appeal. *See, e.g., Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 593 n.6 (Ind. 2001) (In civil cases, a party cannot raise an issue for the first time on appeal). In our memorandum opinion, we concluded:

> Here, Mother was aware of Father's alleged fraud in signing the paternity affidavit when Child was born in 2005, and she herself participated in the alleged fraud by also signing the affidavit. Moreover, Mother remained aware of the alleged fraud when the trial court issued the paternity decree in 2014, yet she did not file a direct appeal and challenge the decree on that issue. And furthermore, Mother cites no relevant authority for the proposition that she may compel DNA testing and disestablish Father's paternity under these circumstances. In sum, Mother has failed to show that she is entitled to the extraordinary relief from the paternity decree.

*In re Paternity of W.A., III,* slip op. p. 4-5 (internal footnote and reference omitted).

The doctrine of *res judicata* prevents the repetitious litigation of that which is essentially the same dispute. *In re Adoption of Baby W.*, 796 N.E.2d 364, 373 (Ind. Ct. App. 2003), *reh'g denied, trans. denied*. Within this doctrine, claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. *Id*. Accordingly, as Mother's claim has been litigated and decided on the merits, she cannot now raise the issue again. Accordingly, we deny Mother's request to re-litigate this issue.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion by modifying Mother's parenting time.

Affirmed.

Najam, J. and May, J. concur